## DECLARATION OF DAVID SIMKINS

I, David Simkins, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age, that I am a resident of Florida, that I have personal knowledge of the matters set forth below, and that I could and would competently testify to the matters stated herein:

1. I am an employee of Lion Associates. Lion Associates is a parent to both Simkins Industries and DRAMM Inc. ("DRAMM"). DRAMM is an investment vehicle for my family. I manage the financial investments for DRAMM.

2. I have known Brian Yuen ("Yuen") for approximately ten years. Over those years, I have spoken with Yuen about the stock market and his views on market conditions. In March or April of 2020, I began talking to Yuen about EIA All Weather Alpha Fund I, L.P. (the "Fund"), a long/short equity fund in which his group of investor friends were involved.

3. On May 21, 2020, Yuen introduced me via email to Andrew Middlebrooks ("Middlebrooks"), Charles Chen ("Chen") and Naufal Sanaullah ("Sanaullah"), whom he collectively referred to as "the EIA team." **Exhibit 1 DRAMM/SIMKINS_0000315-355 at 315**. In that email, Yuen attached a Q1 2020 Investor Presentation (*id.* at **DRAMM/SIMKINS_0000338-355**), an April 2020 Fund tear sheet (*id.* at **DRAMM/SIMKINS_0000316-317**), and two investor notes from "EIA All Weather Alpha Partners, LLC," regarding financial market conditions and related matters.

4. The Q1 2020 Investor Presentation made various representations, including:

    a. "The Fund seeks to capitalize on investment opportunities from undervalued securities with long-tailed growth prospects." **Exhibit 1 at DRAMM/SIMKINS_0000339**.

    b. "The Fund will utilize GLM Analytics, our proprietary quantitative research platform, to identify opportunities and evaluate when to buy or sell stocks." *Id.*

Exhibit C

 c. "The Fund was launched in Q1 2017 by Andrew Middlebrooks, CEO of EIA All Weather Alpha Partners, LLC ('EIA'), the Fund's General Partner... Headquartered in Detroit, Michigan . . . Andrew serves as CIO and Portfolio Manager for the Fund." *Id.* (The General Partner, EIA All Weather Alpha Fund I Partners, LLC, is defined hereafter as "EIA".)

 d. The "Track Record" "for EIA as of September 30, 2019" included a "476.81% cumulative return" and "81.82% Winning Months (%)." *Id.*

 e. Under a "Risk Management" section it stated:

  i. "We institute automated portfolio level risk controls on a daily basis" (*id.* **at DRAMM/SIMKINS_0000340**);

  ii. "We set hard limits and quantifiable breaks to manage risk at both the portfolio and position level" (*id.*).

 f. The Q1 2020 Investor Presentation also listed five members of the Fund's Advisory Board, along with their biographies. The biographies indicated these individuals had extensive experience in the financial and investment industries. *Id.* **at DRAMM/SIMKINS_0000353**.

5. I reviewed the April 2020 tear sheet that represented, among other things, the following:

 a. Middlebrooks, Chen, and Sanaullah were fund managers (**Exhibit 1 at DRAMM/SIMKINS_0000316**);

 b. That the Fund's auditor was Deloitte (*id.*);

 c. That the Fund was started in Q1 of 2017 and

  i. that its performance "since inception" was "+756.15%,"

  ii. the "Firm AUM [Assets Under Management] ~$25 million,"

  iii. that "Winning Months (%) 80.00%,"

  iv. that the "3M [three month performance] +42.62%,"

  v. that the "YTD [year to date performance] +48.53%." *Id.*

6. After the May 2020 email introduction, I participated in a Zoom meeting with Middlebrooks, Chen, and Sanaullah to continue discussing the Fund and a possible investment

Exhibit C

on behalf of DRAMM. In addition to the Zoom meeting, I had follow-up phone conversations with Middlebrooks, Yuen, Chen and Sanaullah to discuss the Fund's investment strategy.

7. In addition, Chen emailed me the Fund's Private Placement Memorandum (**Exhibit 2 at DRAMM/SIMKINS_0000132-174**), Limited Partnership Agreement (**Exhibit 3 at DRAMM/SIMKINS_0000100-131**) and Subscription Agreement (**Exhibit 4 at DRAMM/SIMKINS_0000239-273**).[1]

    a. The PPM represents, among other things, that:

        i. "EIA All Weather Alpha Fund I Partners, LLC (the 'Investment Manager') serves as the Fund's Investment Manager and is responsible for managing the investment of the Fund's assets." **Exhibit 2 at DRAMM/SIMKINS_0000136**.

        ii. "EIA All Weather Alpha Fund I Partners, LLC is also the Fund's General Partner…[and] exercises ultimate authority over the Fund and is responsible for engaging service providers for the Fund." *Id*.

        iii. "Andrew Middlebrooks serves as portfolio manager for the Investment Manager." *Id*.

        iv. "The Fund is a quantitative relative value fund. The Fund's strategy is based on a [sic] utilizing a proprietary intellectual framework of forecasting, research, portfolio simulation and valuation models to evaluate when to buy or sell stocks using over 100 factors." *Id*.

        v. "As compensation for the management services provided to the Fund, the Investment Manager receives a management fee" that ranges from an equivalent of 2% to 1.5% per year of the amount invested, depending on the length of time an investment remains with the Fund. *Id*. **at DRAMM/SIMKINS_0000139**.

8. Based on the representations made to me identified herein, on May 29, 2020, I invested $1 million in limited partnership interests in the Fund on behalf of DRAMM by executing a wire transfer from DRAMM's financial institution's account to EIA's bank account

---

[1] This copy of the subscription agreement was signed in October 2020. However, based on my recollection, it is the same version of the subscription agreement I received in May 2020.

Exhibit C

x7260 at Signature Bank ("EIA Bank Account"). By investing in the Fund's limited partnership interests, I expected to profit from the efforts of others.

9. As described above, the representations made to me by Middlebrooks and EIA led me to believe that the Fund had excellent returns, a good track record, and a well-known, legitimate auditor. The representations about the Fund's returns, track record, and auditor were significant to my investment decision. If I had been told that these representations were inaccurate, that would have been important to my investment decision.

10. Further, based on the representations made to me by Middlebrooks and EIA, I understood that the Fund had an experienced advisory board, and that the individuals identified in the Q1 2020 Investor Presentation were in fact members of the Fund's advisory board. It was important for me in my decision to invest that the Fund had an experienced advisory board. If I had been told that those individuals were not actually members of the Advisory Board, or that they provided no services to the Fund that would have been important to my investment decision.

11. After making the initial investment in the Fund on behalf of DRAMM, EIA and the Fund generated monthly statements showing the value of the investment in the Fund and provided access to the statements through an on-line Morningstar investor portal. I regularly reviewed these monthly statements to monitor the performance of DRAMM's investment in the Fund.

12. The monthly account statements consistently showed a gain in the value of DRAMM's investment. After the initial investment in the Fund on behalf of DRAMM, I invested additional capital in the Fund on behalf of DRAMM based on the representations described above and the positive performance and increasing value of the investment in the Fund as reflected in the monthly statements. In total, I invested $12 million on behalf of DRAMM in

Exhibit C

the Fund between May 2020 and December 2020. I made each of these investments by initiating wire transfers from DRAMM's financial institution's account to the EIA Bank Account. In addition to the $1,000,000 investment described above:

a. On June 30, 2020, I invested an additional $1,000,000 on behalf of DRAMM.

b. On or about July 15, 2020, I received the DRAMM June investor statement, which showed a monthly return of 3.89% and a 6/30/2020 value of the DRAMM account of $2,077,800. **Exhibit 5 at DRAMM/SIMKINS_0000056-57 at 000057**.

c. After receiving the July 15 statement and seeing the positive performance, on or about July 31, 2020, I invested an additional $1,500,000 on behalf of DRAMM.

d. On or about August 17, 2020, I received the DRAMM July investor statement, which showed a monthly return of 13.15%, a 7/31/2020 value of the DRAMM account of $4,048,281, and a 17.55% increase in the account since inception on 5/29/20. **Exhibit 6 at DRAMM/SIMKINS_0000060-61 at 000061**.

e. After receiving the August 17 statement and seeing the positive performance, on or about August 28, 2020, I invested an additional $2,000,000 on behalf of DRAMM.

f. On or about September 16, 2020, I received the DRAMM August investor statement, which showed a monthly return of 7.15%, an 8/31/2020 value of the DRAMM account of $6,480,723, and a 25.96% increase in the account since inception on 5/29/20. **Exhibit 7 at DRAMM-SIMKINS_0000064-65 at 0000065**.

Exhibit C

g. After receiving the September 16 statement and seeing the positive performance, on or about September 29, 2020, I invested an additional $500,000 on behalf of DRAMM.

h. On or about October 20, 2020, I received the DRAMM September investor statement, which showed a monthly return of 6.92%, a 9/30/2020 value of the DRAMM account of $7,463,789, and a 34.67% increase in the account since inception on 5/29/20. **Exhibit 8 at DRAMM/SIMKINS_0000068-69 at 0000069.**

i. After receiving the October 20 statement and seeing the positive performance, on or about October 30, 2020, I invested an additional $1,000,000 on behalf of DRAMM.

j. On or about November 17, 2020, I received the DRAMM October investor statement, which showed a monthly return of 8.04%, a 10/30/2020 value of the DRAMM account of $9,144,278, and a 45.50% increase in the account since inception on 5/29/20. **Exhibit 9 at DRAMM/SIMKINS_0000072-73 at 0000073.**

k. After receiving the November 17 statement and seeing the positive performance, on or about November 25, 2020, I invested an additional $5,000,000 on behalf of DRAMM.

13. As part of the investment process, for each investment I made into the Fund, my business assistant, Karen Llera ("Llera"), would email Chen a subscription agreement signed by me. *See, e.g.*, **Exhibit 4 at DRAMM/SIMKINS_0000273.** In response, Chen would email Llera, with a cc to me, a countersigned signature page signed by Middlebrooks, and typically

Exhibit C

include a statement that the bank wire for the investment was received. *See, e.g.*, **Exhibit 10 at DRAMM/SIMKINS_0000800-805.**

14. I continued to receive monthly statements showing the positive performance of the DRAMM investment in the Fund. Because of the Fund's positive performance, I did not withdraw or seek to redeem DRAMM's investment.

15. Additionally, in July of 2020, I began investing in limited partnership interests in the Fund on behalf of myself, individually, based on the representations I received from EIA and Middlebrooks regarding the Fund and its performance that I received in connection with the DRAMM investments in the Fund. I continued to invest in periodic increments up until April 1, 2022. I continued to invest, individually, in the Fund, because of the representations made to me by EIA and Middlebrooks about the Fund noted above and because my Morningstar account statements from EIA and the Fund for my personal investment continued to show monthly positive returns, just as the monthly account statements for DRAMM did, as shown above. **See Exhibit 11** (Collection of August 2020 – February 2022 Account Statements for David Simkins Grant Trust Personal Investment in the Fund). In total, I personally invested $4.3 million into the Fund.

16. I also relied on the annual Schedule K-1 forms that were provided to me by EIA for both DRAMM and my personal investment. **Exhibit 12 at DRAMM/SIMKINS_0000291, Exhibit 13 at DRAMM/SIMKINS_0000284.** I used the K-1s to verify that the gains stated on my account statements were correct and, based on that information, I decided not to withdraw any money from the DRAMM account or my personal account and to invest additional capital into my personal Fund account.

Exhibit C

17. On January 14, 2022, I made a redemption request to the Fund on behalf of DRAMM for $4 million. **Exhibit 14 at DRAMM/SIMKINS_0000372**. There was a sixty-day notice period required for a redemption. In January and March of 2022, I also made three $1 million redemption requests on January12, 2022, January 31, 2022 and March 16, 2022, for a total of $7 million of redemption requests on behalf of DRAMM. *See* **Exhibit 15 at DRAMM/SIMKINS_0000274, DRAMM/SIMKINS_0000378, DRAMM/SIMKINS_0000275**.

18. I have yet to receive the redemptions requested on behalf of DRAMM, apart from the capital swap discussed at paragraph 22 below. Middlebrooks told me during a telephone call on or around April 11, 2022, that Interactive Brokers, the brokerage firm he told me the Fund money was at, was conducting a compliance review and not releasing wires.

19. The Limited Partnership Agreement provides that the Fund will provide audited financial statements to all limited partners no later than 120 days after fiscal year-end. **Exhibit 3 at DRAMM-SIMKINS_0000116**. I did not receive audited financial statements on behalf of the Fund for fiscal year 2020 (in 2021) or fiscal year 2021 (in 2022) per the requirements of the LPA. The only financial statements I received for the Fund were for fiscal year 2020 and I received those in January 2022.

20. On September 3, 2021, Middlebrooks emailed me a copy of a signed engagement letter with Spicer Jeffries LLP ("Spicer") for Spicer to complete work on the Fund's fiscal year 2020 audit. **Exhibit 16 at DRAMM/SIMKINS_0000364-369**. I relied on this representation to believe the fiscal year 2020 audit was being prepared by Spicer.

21. By January 2022, my family expressed significant concern that the Fund had not produced audited financial statements at any point since the inception of DRAMM's investment.

8

Exhibit C

22. Due to my concerns about the delay in the Fund providing audited financial statements and because I felt responsible for my family's investments in the Fund through DRAMM, in late January 2022, I swapped in $1 million of my personal investment in the Fund in exchange for a $1 million redemption of DRAMM's capital. This swap leaves DRAMM with $11 million net principal invested in the Fund instead of $12 million and increases my personal principal investment by $1 million from $3.3 million to a total of $4.3 million.

23. On January 27, 2022, after repeatedly pressing Middlebrooks for audited Fund financial statements, Yuen sent me an email with an attached audit report for fiscal year 2020. **Exhibit 17 at DRAMM/SIMKINS_0000298-314**. On January 31, 2022, I received an email from Middlebrooks through a Morningstar alert titled "Client Web Portal Report," which stated that Middlebrooks posted a new report to the Client Web Portal. When I clicked the link to log in, I was able to see that the audited financial statement for the Fund year ended December 31, 2020, was posted on the Morningstar portal. A true and correct copy of the audited financial statements I was provided is attached here as **Exhibit 18 at DRAMM/SIMKINS_0000175-189**. This document indicated that Spicer performed the audit.

24. At the end of February 2022, I accessed the monthly statements for DRAMM's investment and my personal investment in the Fund through the Morningstar portal. The statement for DRAMM stated that its $11 million investment was valued at approximately $29 million as of February 28, 2022. **Exhibit 19 at DRAMM/SIMKINS_0000097-99 at 99**. The statement for my personal investments stated that my total $4.3 million investment was valued at approximately $6.7 million as of February 28, 2022. **Exhibit 20 at DRAMM/SIMKINS_0000090-93 at 93**.

Exhibit C

25. In March 2022, EIA and the Fund provided me with an interim update. A true and correct copy of the interim update is attached here as **Exhibit 21 at DRAMM/SIMKINS_0000002-3**. The interim update states, among other things, that "[w]ith the Nasdaq100 and Russell 2k down~20% from their highs, we are writing this letter to provide more color on what we are seeing in the market and <u>to highlight that now is a good time to add funds to your EIA account if you were thinking about it or looking to put some extra capital to work amidst the broadly bearish sentiment</u>." (emphasis in original).

26. I have spoken on the phone with Middlebrooks one-on-one approximately once every two weeks since I began investing in the Fund. Many times during these calls, Middlebrooks confirmed the Fund's assets under management ("AUM"). He also confirmed the holding values stated on the monthly investor statements I accessed through the Morningstar portal. *E.g.*, **Ex. 18 at DRAMM/SIMKINS_0000099**. Middlebrooks repeatedly told me the performance of the Fund was strong and the AUM was growing. Most recently in February or March of 2022, Middlebrooks told me the Fund had $110 million in AUM.

27. Middlebrooks told me that his family's investment made up one third of the Fund, my investments (including DRAMM) made up one third of the Fund, and the rest of the investors made up the other third of the Fund. Middlebrooks's representation that the Fund had over $100 million of assets indicated to me that the Fund was well-established and the fact that it had attracted this level of investment from other investors lent further credibility to the Fund's and EIA's legitimacy and trading strategy.

28. Having received audited financial statements and based on these representations from Middlebrooks, on March 31, 2022, I personally invested an additional $300,000 in the Fund.

Exhibit C

29. The last time I spoke with Middlebrooks was early in the evening on April 12, 2022 over the phone. I asked Middlebrooks if I could come to Dallas to meet with him in person and review the Interactive Brokers statements, but Middlebrooks did not respond to that suggestion. Instead, Middlebrooks indicated he had a call scheduled with his lawyer about the Interactive Brokers compliance review issue that he was late for and had to get off our call. I asked Middlebrooks if he would update me on how the call with the lawyer went on the Interactive Brokers issue. I never heard anything back. I tried calling and texting Middlebrooks many times since then, without getting any response. The last time I texted Middlebrooks was the morning of April 14, 2022.

30. I spoke with Yuen on April 24, 2022. It was a cordial conversation. I left the call with the understanding that Yuen was no longer actively working with EIA and is concerned about getting his own money out of the Fund.

31. On April 28, 2022, I made redemption requests for full payment of all investment and profits in both the DRAMM account (**Exhibit 22 at DRAMM/SIMKINS_0000234**) and my personal accounts (**Exhibit 23 at DRAMM/SIMKINS_0000235**; **Exhibit 24 at DRAMM/SIMKIN_0000371**). The redemptions are due June 30, 2022.

Exhibit C

32. As of today, I have not received any repayment of DRAMM's investment (aside from the swap described in Paragraph 22) or my personal investment in the Fund, nor have I received any payment of the profits that EIA and Middlebrooks represented DRAMM's investment or my personal investment in the Fund had earned.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 12, 2022.

*David Simkins* (signature)
David Simkins

Exhibit C