UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. MIDDLEBROOKS and EIA ALL WEATHER ALPHA FUND I PARTNERS, LLC,<br><br>    Defendants, and<br><br>EIA ALL WEATHER ALPHA FUND I, LP, EIA ALL WEATHER ALPHA FUND PARTNERS II, LLC, and SHOP STYLE SHARK, LLC,<br><br>    Relief Defendants. | Case No.<br><br>JURY TRIAL DEMANDED<br><br>UNDER SEAL |

**DECLARATION OF MARC D. RICCHIUTE**

I, MARC D. RICCHIUTE, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age, and I am competent to testify to the matters stated herein:

1.  I am employed as an attorney in the Division of Enforcement in the Denver Regional Office of the Securities and Exchange Commission ("SEC") and hold the title of Senior Counsel.

2.  Among other things, the federal securities laws authorize the SEC to conduct investigations to determine whether the federal securities laws have been violated and to bring civil actions before the United States District Courts to enforce and secure compliance with those laws.

1

Exhibit A

3. As part of my job duties, I am responsible for investigating potential violations of the federal securities laws.

4. In conducting factual investigations, my job responsibilities generally include issuing subpoenas, taking testimony, and conducting other investigative activities, as well as drafting internal legal analyses and preparing cases for litigation.

5. I was assigned to investigate a matter captioned <u>In the Matter of EIA All Weather Alpha Fund Partners, LLC (D-04050)</u>. As a result of that investigation, among other things, the SEC has authorized this action seeking the relief specified in the Complaint and the SEC's Emergency *Ex Parte* Motion for a Rule 65(b)(1) Temporary Restraining Order, an Asset Freeze and Other Emergency Ancillary Relief ("Motion") to which this Declaration is an exhibit.

## I.  Overview of the Investigation

6. On February 28, 2022, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in the Matter of EIA All Weather Alpha Fund Partners, LLC (D-04050), which authorized certain members of the SEC staff, including me, to subpoena documents and take investigative testimony.

7. As part of my investigation, I collected, researched, and analyzed information relating to, among other things, the offer and sale of securities by, among others, Andrew M. Middlebrooks ("Middlebrooks") and EIA All Weather Alpha Fund I Partners LLC ("EIA," collectively with Middlebrooks, "Defendants"), as well as EIA All Weather Alpha Fund I, LP ("Fund"), EIA All Weather Alpha Fund Partners II, LLC, and Shop Style Shark, LLC ("Shop Style") (collectively, "Relief Defendants").

8. Among other things, this investigative work included a review of documents provided by Defendants, banks, brokerage firms, accounting firms, investors, and other third

Exhibit A

parties.

9. I also took investigative testimony from Middlebrooks and participated in interviews of three Fund investors and one prospective Fund investor.

10. Based on the investigative work I have conducted throughout the investigation, I identified the facts set forth below.

## II.     Background of Defendants

11. **Andrew M. Middlebrooks**, age 30, was a resident of the Detroit, Michigan metro area from approximately 2017 through February 2020, but now claims to be a resident of Dallas, Texas. Exhibit 1, Middlebrooks Inv. Testimony Transcript, at 18:17-20; 19: 1-17. During the SEC's investigation, the SEC took Middlebrooks' testimony and he repeatedly asserted his Fifth Amendment privilege against self-incrimination in response. Exhibit 1.

12. **EIA All Weather Alpha Fund I Partners, LLC** ("EIA") is a Delaware limited liability company formed on or about June 12, 2017, with its principal place of business in Novi, Michigan. Exhibit 2 and Exhibit 3 at SEC-GSCO-GS #220211-001550. EIA is the general partner and investment manager of the Fund. Exhibit 4 at SEC-D-4050-E-0000163. Middlebrooks, the Chief Executive Officer ("CEO"), Chief Investment Officer ("CIO") (Exhibit 5) and sole member-manager of EIA, owns 100% of the membership interests in EIA (Exhibit 3 at SEC-GSCO-GS #220211-001551), and serves as the portfolio manager of EIA (Exhibit 4 at SEC-D-4050-E-0000163). EIA has also conducted business under the names **"EIA All Weather Alpha Partners"**; "EIA All Weather Alpha Partners, LLC"; "Eia Alpha Partners Fund Management"; and "Excellence In Investing In Action Alpha Partners Fund Management LLC". The term "EIA" incorporates these additional names under which EIA purportedly acted.

# Exhibit A

III.    **Background of Relief Defendants**

13.    **EIA All Weather Alpha Fund I, LP** ("Fund") is a Delaware limited partnership, formed on or about June 13, 2017.  Exhibit 6.  It is a pooled investment vehicle that has sold limited partnership interests to investors.  Exhibit 4.  The Fund's assets are managed by EIA, which also serves as its general partner.  Id. at SEC-D-4050-E-0000163.  EIA and Middlebrooks have also referred to the Fund as "Excellence in Action (EIA) All Weather Alpha Fund I, LP," "EIA All Weather Alpha Fund," and "EIA All Weather Alpha Partners Fund I, LP" in various Fund documents and marketing materials that I reviewed.  The term "the Fund" incorporates these additional names under which the Fund purportedly acted.

14.    **EIA All Weather Alpha Fund Partners II, LLC** ("EIA II") is a Delaware limited liability company formed on or about October 24, 2019, with its principle place of business in Detroit, Michigan.  Exhibit 7 at Signature Bank 1.  Middlebrooks is the sole member of EIA II.  Id. at Signature Bank 1-3.  EIA II has also conducted business under the name "EIA All Weather Alpha Fund II Partners LLC".  The term "EIA II" incorporates this additional name under which EIA II purportedly acted.

15.    **Shop Style Shark, LLC** ("Shop Style"), is a Texas limited liability company formed on or about June 15, 2021, with its principle place of business in Austin, Texas.  Exhibit 8.  Dionne T. Middlebrooks ("D. Middlebrooks") is the managing member of Shop Style.  Id.  D. Middlebrooks has been Middlebrooks's wife since November 2018.  Exhibit 1 at 19:21-25; 20:102.  From approximately October 9, 2017 through August 10, 2021, Shop Style was a Michigan limited liability company.  See Exhibit 9 and Exhibit 10.

IV.    **Fund Background and Offering**

16.    Organizational documents indicate that EIA and the Fund were formed in or

Exhibit A

around June 2017. *See* Exhibit 2 (EIA) and Exhibit 6 (the Fund).

17. The Fund's private placement memorandum ("PPM") provides that the Fund "is a quantitative relative value fund" with a strategy "based on utilizing a proprietary intellectual framework of forecasting, research, portfolio simulation and valuation models to evaluate when to buy or sell stocks using over 100 factors." Exhibit 4 at SEC-D-04050-E-0000163.

18. EIA is "the Fund's General Partner" and "serves as the Fund's Investment Manager" and "exercises ultimate authority over the Fund and is responsible for engaging service providers for the Fund", as well as "responsible for managing the investment of the Fund's assets." Id.

19. EIA is "controlled by Andrew Middlebrooks" and Middlebrooks serves as the portfolio manager for EIA and "manages the Fund's securities portfolio and operations on behalf of" EIA. Id. at SEC-D-04050-E-0000166; SEC-D-04050-E-0000177.

20. At various points from at least May 2017 through the present, Middlebrooks and EIA solicited investors and prospective investors through EIA's website, which described EIA's investment strategy and other information about its operations and provided contact information. Exhibit 11. In addition, at various points from at least May 2017 through the present, Middlebrooks maintained a LinkedIn account that contained background information on the Fund. Exhibit 5.

21. Each investor in the Fund was offered and sold a limited partnership interest in the Fund. Exhibit 4 (PPM).

22. To complete a Fund investment, investors sign various "Subscription Documents." Exhibit 12.

23. According to the Subscription Documents, investors in the Fund also were

# Exhibit A

provided with a copy of a PPM and limited partnership agreement ("LPA") prior to their investment. Exhibit 12 at SEC-D-04050-E-0000093-94.

24. The PPM and LPA each describe numerous aspects of the structure, operation, and management of the Fund, including how the Fund must use investor money – to invest in a wide range of investments, including securities, using its proprietary analytic framework called "Contextual Alpha Modeling" to drive its investment strategy – and what fees will be charged against the Fund's assets. Exhibit 4 at SEC-D-04050-E-0000169 and Exhibit 13 (LPA).

25. The PPM and LPA provide for management fees that vary between 1.5% and 2.0% per year of an investor's capital contribution, depending on the length of time the capital contribution remains invested, and a performance allocation of up to 20% of the net realized and unrealized appreciation in value of the Fund's assets at the end of each year. Exhibit 4 at SEC-D-04050-E-00001696-67 (PPM) and Exhibit 13 at SEC-D-04050-E-0000139-40 (LPA).

26. Documents provided by investors show that investors generally receive at least one Fund marketing document. That information has, over time, come in the form of Investor Presentations, Performance Sheets, and Monthly Newsletters. *See e.g.*, Exhibit 14 (investor presentation); Exhibit 15 (performance sheet); and Exhibit 16 (monthly newsletter).

27. These documents have represented the Fund had the following in "assets under management" ("AUM") and returns:

    a. A January 2018 Performance Sheet represented that the Fund had AUM of "$4 million" and a total positive return of 117.25% in 2017. Exhibit 17.

    b. An April 2018 Performance Sheet represented that the Fund had AUM of "$8 million". Exhibit 18 at SEC-PREQIN-E-0000164.

# Exhibit A

  c. An October 2019 Performance Sheet represented that the Fund had AUM of "$17 million" and a total positive return of 54.31% in 2018.  Exhibit 19.

  d. An April 2020 Performance Sheet represented that the Fund had AUM of "~$25 million" and a total positive return of 71.94% in 2019.  Exhibit 20.

  e. A February 2021 Performance Sheet represented that the Fund had AUM of "~$50 million" and a total positive return of 135.74% in 2020.  Exhibit 21.

  f. A December 2021 Performance Sheet represented that the Fund had AUM of "~$100 million" and a total positive return of 86.66% in 2021.  Exhibit 22.

  g. A January 2022 Investor Presentation represented that the Fund had a total positive return of 2,509% since inception.  Exhibit 23.

28. Investor Presentations provided by investors show that the Fund had a five or six member "Advisory Board" comprised of individuals with experience in the financial and legal industry.  *See e.g.,* Exhibit 24 at SEC-D-04050-E-0000018 and Exhibit 25 at SEC-D-04050-E-0000219.

**V.** **Statements Concerning Auditors**

29. Defendants represented to Fund investors that the Fund had engaged auditors.

30. In a July 2017 investor presentation, which was provided to prospective investors at least through March 2022, the Fund's auditor was purported to be "Deloitte or Plante Moran" ("Audit Firm 1" and "Audit Firm 2", respectively).  Exhibit 14 at SEC-D-04050-E-0000256.

31. Audit Firm 2 was also identified next to "Accounting" on Performance Sheets in June 2021 and November 2021.  Exhibit 15 at SEC-D-04050-E-0000023 (June 2021) and

# Exhibit A

Exhibit 26 at SEC-D-04050-E-0000082 (November 2021). Audit Firm 2 informed staff that neither EIA nor the Fund has ever been a client of Audit Firm 2. Exhibit 27.

32. In Investor Presentations from December 2017 through at least June 2021, which were provided to investors and prospective investors, Audit Firm 1 was purported to be the Fund's auditor. Exhibit 24 at SEC-D-04050-E-0000017 (December 2017) and Exhibit 25 at SEC-D-04050-E-0000218 (June 2021). Audit Firm 1 informed the staff that it was unable to identify any connection between EIA or the Fund and Audit Firm 1 or any other Audit Firm 1 entity. Exhibit 28.

33. Beginning in at least December 2021, Performance Sheets and Investor Presentations represented that Spicer Jeffries ("Audit Firm 3") was the Fund's auditor. *See e.g.*, Exhibit 29 at SEC-CastanonR-E-0000329 (performance sheet) and Exhibit 23 at SEC_EIA_0000400 (investor presentation).

**VI. Documents and Information Submitted to a Hedge Fund Data Service**

34. In January 2018, Middlebrooks submitted documents and information to a hedge fund data service that markets itself as providing funds exposure to over 170,000 fund managers, investors, placement agents, service providers, advisors, and other industry professionals.

35. The documents Middlebrooks submitted include a Q4 2017 performance sheet and an (undated) executive summary. Exhibit 30 (performance sheet) and Exhibit 31 (executive summary).

36. After January 2018, Middlebrooks submitted additional information to the hedge fund data service. These documents include an April 2018 Performance Sheet and a November 2021 Performance Sheet. Exhibit 18 (April 2018) and Exhibit 32 (November 2021).

37. Based on the performance information submitted by Middlebrooks, the hedge fund data service awarded the Fund certain accolades, such as "Top Performing Hedge Fund" in

Exhibit A

the "Relative Value Strategies" and "Volatility Trading" categories for "Jan. 2017 – Dec. 2019".

38.   These Fund accolades were identified on EIA's website (Exhibit 11), Middlebrooks's LinkedIn profile (Exhibit 5), in Performance Sheets (*see e.g.*, Exhibit 19 at SEC-CastanonR-E-000072; and Exhibit 22 at SEC-CastanonR-E-000084-85), and in Investor Presentations (*see e.g.*, Exhibit 25 at SEC-D-04050-E-0000204; and Exhibit 23 at SEC_EIA_0000385).

## VII.   Facts Regarding Efforts to Obtain Evidence from Defendants

39.   On March 31, 2022, I issued a document preservation letter and document subpoena to EIA seeking, among other things, documents concerning the identity of relevant EIA personnel, the identity of relevant bank and brokerage accounts, an investor list (containing contact information, subscription amounts, and current value), and all audited financials for the Fund.  The subpoena set a deadline to produce this set of requested materials by April 7, 2022.

40.   The March 31, 2022 subpoena also requested, among other things, documents concerning the Fund offering, Fund marketing materials, relevant financial statements and general ledgers, and communications with investors.  The subpoena set a deadline to produce this set of requested materials by April 14, 2022.

41.   On March 31, 2022, I also issued a document preservation letter and a subpoena requiring Middlebrooks to appear and provide sworn testimony via audio-visual means on April 12, 2022 (extended to April 19, 2022).

42.   On April 7, 2022, counsel for Defendants sent an email noting that "my firm's clients (Andrew Middlebrooks and EIA All Weather Alpha Fund I Partners, LLC) will maintain the status quo until further notice, meaning:  (1) they will not accept new client funds; and (2) they will not dissipate Fund or client assets."  (Exhibit 33.)

# Exhibit A

43. On April 8, 2022, EIA produced an Excel file identifying current and former EIA personnel, bank and brokerage accounts, and a list of investor account names.

44. Upon receiving the Excel file, I sent an email to counsel noting that the file "doesn't contain a response to . . . among other things, investor subscription amount, subscription date, redemption amount (if applicable), redemption date (if applicable), and – importantly – current value as of 3/31/2022.  While we expect to receive all that information in short order, at a minimum, we would like the current value of the fund by the end of the day." (Exhibit 34.)

45. On April 15, 2022, EIA produced 16 documents in response to the March 31, 2022 subpoena.

46. On April 19, 2022 Middlebrooks appeared for testimony and repeatedly asserted his Fifth Amendment privilege against self-incrimination in response to questioning.

47. On April 22, 2022, the SEC issued a document subpoena to EIA calling for the production of additional documents by May 13, 2022.

48. On April 27, 2022, counsel for the Defendants sent an email notifying me that his firm would be "withdrawing from its representation of EIA (the management entity) at this time.  Thus, we will not be handling any further productions on the pending subpoenas related to EIA.  Presently, we are still representing Andrew Middlebrooks individually in the SEC matter." (Exhibit 35.)

49. On April 28, 2022, the SEC issued a document subpoena to Middlebrooks calling for the production of materials by May 12, 2022.

50. On May 4, 2022, EIA produced 63 records in response to the March 31, 2022 subpoena and on May 13, 2022 a further 955 records, including several K-1s responsive to the

Exhibit A

April 22, 2022 subpoena, in response to the March 31, 2022 subpoena.

51. To date, EIA has not produced the bulk of materials in response to the April 22, 2022 subpoena (due May 13, 2022) and Middlebrooks has not produced any materials in response to the April 28, 2022 subpoena (due May 12, 2022).

52. In particular, as part of the March 31, 2022 subpoena issued to EIA, the SEC requested the current value of the Fund as of that date.  As part of the April 22, 2022 subpoena issued to EIA, the SEC requested "[d]ocuments evidencing all exiting and realized investments . . . including the investment name, investment amount(s), dates(s) of investments, dates(s) of realization from the investment, and current value as of the date of subpoena (if not sold)."  To date, EIA has failed to produce any documents or information that would provide support for the current value of the Fund as of March 31, 2022 or the uses to which Fund assets have been put.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 17, 2022

/s *Marc D. Ricchiute*
Marc D. Ricchiute

# Exhibit A